# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Moore v. Chicago Park District*, 2011 IL App (1st) 103325

---

| | |
|---|---|
| Appellate Court Caption | ROBERTA MINOR MOORE, the Special Administrator of the Estate of Sylvia Lee Moore, Plaintiff-Appellee, v. CHICAGO PARK DISTRICT, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1–10–3325 |
| Filed | June 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A certified question as to whether an unnatural accumulation of snow and ice constituted the "existence of a condition of public property" as that phrase is used in the language of section 3–106 of the Tort Immunity Act, which provides immunity from liability based on the "existence of a condition of any public property," was answered in the negative by the appellate court, since the actions of a park district employee in removing snow from a sidewalk onto a parking lot in a park was an unsafe activity conducted on otherwise safe property, and in the action against the park district for the death of plaintiff's decedent when she slipped and fell on the accumulated ice and snow, the affirmative defense provided by section 3–106 did not immunize the district from liability. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07–L–000778; the Hon. Randye A. Kogan, Judge, presiding. |
| Judgment | Certified question answered. |

| Counsel on Appeal | Chicago Park District Law Department, of Chicago (George P. Smyrniotis, Nelson A. Brown, and Sarah H. Greene, of counsel), for appellant. |
| | |
| | Steinberg, Burtker & Grossman, Ltd., of Chicago (Richard J. Grossman, of counsel), for appellee. |
| | |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Cunningham concurred in the judgment and opinion. Justice Connors dissented, with opinion |

**OPINION**

¶ 1 Here we are called upon to determine the following certified question pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010): "Does an unnatural accumulation of snow and ice constitute the 'existence of a condition of any public property' as this expression is used in Section 3–106 of the Tort Immunity Act?" We answer the certified question in the negative. In Illinois, ice and snow are temporary and not permanent conditions of real property. The snow and ice were moved by the park district and thus became an unnatural accumulation. In construing section 3–106 of the Local Governmental and Governmental Employees Tort Immunity Act (hereafter Act) (745 ILCS 10/3–106 (West 2008)) strictly against the Park District, we cannot say that the unnatural accumulation of snow and ice is a condition of public property within the meaning of the statute. Under our supreme court's decision in *McCuen v. Peoria Park District*, 163 Ill. 2d 125, 129 (1994), "If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented to the property is due to the misuse of the property and not to the condition of the property."

¶ 2                                    JURISDICTION
¶ 3 The trial court certified the question now before this court on October 29, 2010. The park district filed a petition for leave to appeal, which this court granted on December 3, 2010. Accordingly, this court has jurisdiction pursuant to Rule 308 governing certified questions. Ill. S. Ct. R. 308 (eff. Feb. 26, 2010).

¶ 4                                    BACKGROUND
¶ 5 Sylvia Lee Moore and Glorious Williams regularly attended a senior water aerobics class offered by the Chicago park district (Park District) at Fernwood Park. On the morning of January 23, 2006, Ms. Moore and Ms. Williams drove together to Fernwood Park and Ms.

Moore parked the car in the parking lot. It had snowed several inches over the weekend, but the parking lot had been plowed and shoveled. A Park District employee had shoveled the snow on the sidewalks at Fernwood Park by pushing the snow to the curb. After completing the class, both women left the building and headed for Ms. Moore's car in the parking lot. Three cars that were parked on or near the handicap parking space blocked easy access to the parking lot and there was snow and ice between the parked cars. Ms. Moore proceeded to step between two parked cars and, while stepping over the snow, she fell and broke her leg. After undergoing an operation to repair her broken leg, Ms. Moore suffered brain damage and subsequently died.

¶ 6 Plaintiff, Roberta Minor Moore, as special administrator, filed a two-count complaint alleging the Park District negligently created an unsafe unnatural accumulation of ice and snow on its property which caused injuries and the death of her decedent, Sylvia Lee Moore. Count I asserted a survivor's action while count II alleged wrongful death. The Park District moved for summary judgment, which the trial court denied on March 18, 2010. On April 13, 2010, the Park District filed a motion to certify two questions for interlocutory appeal pursuant to Rule 308, and supplemented its motion on May 10, 2010. On October 14, 2010, the trial court vacated its denial of the Park District's motion for summary judgment and certified the question now before this court on October 29, 2010. The Park District filed an application for leave to appeal pursuant to Rule 308, which this court granted on December 3, 2010.

¶ 7             ANALYSIS

¶ 8 The interpretation of a statute, such as the Tort Immunity Act in this case, is a question of law that we review *de novo. Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). In reviewing a statue, we must ascertain and give effect to the intent of the legislature. *Id.* The intent of the legislature is best found by the plain and ordinary meaning of the statute's language. *Id.* Statutory aids of construction will not be applied if the language of the statute is clear and unambiguous. *Id.*

¶ 9 The Tort Immunity Act does not create any new duties, only immunities and defenses. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). The public entity bears the burden of proving whether it is immune from a claim under the Act. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003). The Act is to be strictly construed against the public entity because it is in derogation of the common law. *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991). Section 3–106 of the Act provides an affirmative defense a public entity may raise.

> "Neither a local public entity nor a public employee is liable for an injury *where the liability is based on the existence of a condition of any public property* intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added). 745 ILCS 10/3–106 (West 2008).

¶ 10    If a public entity proves that the affirmative defense provided by section 3–106 applies, tort liability is precluded. *Bubb*, 167 Ill. 2d at 378. However, section 3–106 does not apply if an alleged liability is not based on the existence of a condition of public property. *McCuen v. Peoria Park District*, 163 Ill. 2d 125, 128 (1994).

¶ 11    Our supreme court, in *McCuen v. Peoria Park District*, addressed whether a public entity was immune from a claim of negligence under section 3–106 of the Act. *McCuen*, 163 Ill. 2d at 128-29. In *McCuen*, a park district operated a mule-drawn hayrack ride in one of its parks. *Id.* at 126. As the hayrack riders were climbing onto the hayrack, an employee of the park district caused "the mule team to suddenly bolt and run off with the driverless hayrack." *Id.* at 126-27. Several people were injured as they were thrown off the hayrack. *Id.* at 127. The court held that section 3–106 immunity did not apply, stating:

> "We do not believe that a driverless hayrack is a condition of public property within the meaning of section 3–106. Plaintiffs do not claim that the hayrack itself was dangerous, defective or negligently maintained, only that the mule team was not handled properly by the park district employee. The handling of the mule team does not relate to the condition of the hayrack itself. If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented to the property is due to the misuse of the property and not to the condition of the property." *Id.* at 129.

In explaining the holding of *McCuen*, this court has stated that "[i]n effect, the supreme court [in *McCuen*] held that section 3–106 immunizes defendant for liability in negligence where the property itself is unsafe, but that section 3–106 does not immunize defendant for unsafe activities conducted upon otherwise safe property." *Nelson v. Northeast Illinois Regional Commuter R.R. Corp.*, 364 Ill. App. 3d 181, 190 (2006).

¶ 12    In *Stein v. Chicago Park District*, 323 Ill. App. 3d 574 (2001), this court addressed whether a park district was immune under section 3–106 of the Act due to a condition on public property. In *Stein*, the plaintiff tripped over a watering hose that had been placed across a sidewalk by two employees of the Chicago park district. *Id.* at 576. This court defined "condition" as "part of the property's 'mode or state of being' [citation], *i.e.*, part of the property itself." *Id.* at 577 (quoting American Heritage Dictionary 290 (3d coll. ed. 1993)). This court held that section 3–106 does not apply because the watering hose was not a "condition" under the Act and was not part of the property. *Id.* Specifically, the hose was not a condition under the Act because it "was moved from place to place within the park to water plants, then returned to storage at the end of the day" and because the hose "was not affixed to the property in such a way as to become a part of the property itself." *Id.*

¶ 13    In construing the Act strictly against the Park District, we cannot say that the unnatural accumulation of snow and ice is a "condition" under section 3–106 of the Act. *Aikens*, 145 Ill. 2d at 278; 745 ILCS 10/3–106 (West 2008). Plaintiff alleges the Park District employee moved the snow into a dangerous position. The snow on the sidewalk was pushed to the curb, creating piles, and snow removal from the parking lot caused cars to park in the handicapped zone in such a way as to block easy access to the parking lot. As in *McCuen*, the parking lot and sidewalk themselves are not dangerous. Here, the plaintiff alleges the

danger and injuries which resulted were caused by the negligent snow removal by a Park District employee. Since the Park District employee allegedly moved and stored snow negligently on property of the Park District that was otherwise in a normal state, section 3–106 of the Act does not apply. See *McCuen*, 163 Ill. 2d at 129 ("If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property.").

¶ 14     Additionally, the temporary nature of snow and ice warrants our conclusion that the unnatural accumulation of snow and ice is not a condition of the property under section 3–106 of the Act. In Illinois, snow and ice conditions are not permanent. If left undisturbed, they melt and evaporate back into the atmosphere. They are not part of the realty or permanently affixed to it. As shown in this case, they are movable. If left in their natural state, no liability for slip and fall claims result. See *Ziencina v. County of Cook*, 188 Ill. 2d 1, 13 (1999) (citing Ill. Rev. Stat. 1989, ch. 85, ¶ 3–105(a) (now codified at 745 ILCS 10/3–105(a) (West 1998) ("It is clear that a local public entity has no duty to remove natural accumulations of ice and snow from public property."))). Here, it is alleged that the Park District employee moved the snow into a dangerous position on the property. Certainly, the snow was not affixed to the property so as to become a part of the property itself. See *Stein*, 323 Ill. App. 3d at 577. Therefore, the property itself was not unsafe, but rather the moving of the snow and ice was an unsafe activity on otherwise safe property. *McCuen*, 163 Ill. 2d at 129.

¶ 15     Defendant relies on this court's decision in *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 299-00 (2010), in which the Second District held that *Stein* is not "factually on point" when addressing whether an unnatural accumulation of ice and snow on a public sidewalk was a condition under section 3–106 of the Act. The Second District held that "although snow and ice are theoretically moveable, they are not of the same nature as something that would be moved around and stored." *Id.* at 299. The Second District reasoned further "that reading *Stein* as holding that a condition under section 3–106 must be affixed to the property is unsupported by the language of section 3–106 and is in direct contravention of other case law." *Id.*

¶ 16     To the extent that *Callaghan* conflicts with our holding in this case, we respectfully decline to follow it. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) (under the doctrine of *stare decisis*, "the opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels"). The notion that snow and ice are "theoretically moveable" belies reality. Every year it is the common experience of Illinois citizens that tons of snow and ice are routinely moved by man and machine within our state. As discussed above, *Stein* is factually on point because allegedly the employee moved the snow and ice, presumably with equipment appropriate for the task, and placed the piles in a way that led to plaintiff's injuries. *Stein*, 323 Ill. App. 3d at 577.

¶ 17                                              CONCLUSION

-5-

¶ 18　　　We answer the certified question before this court, whether "an unnatural accumulation of snow and ice constitute[s] the 'existence of a condition of any public property' as *** used in Section 3–106 of the Tort Immunity Act," in the negative because the alleged activity of the Park District employee of moving the snow and ice onto the parking lot was an unsafe activity conducted upon otherwise safe property. The Park District cannot rely on the immunity provided by section 3–106 of the Act because the unnatural accumulation of snow and ice in this case does not constitute a condition of the property under the Act.

¶ 19　　　Certified question answered.

¶ 20　　　JUSTICE CONNORS, dissenting:

¶ 21　　　I respectfully dissent from the majority's answer to the certified question. As explained below, I believe that the certified question should be answered in the affirmative.

¶ 22　　　As an initial matter, I do not believe that the characterization of the snow and ice as an "unnatural" accumulation has any bearing on the resolution of the certified question. This characterization is a reference to the common-law natural accumulation rule, which is codified in section 3–105(a) of the Tort Immunity Act (740 ILCS 10/3–105(a) (West 2008)). As our supreme court has explained, section 3–105 grants public entities absolute immunity from liability for injuries caused by natural accumulations of ice and snow, but the section offers only conditional immunity when the injury is caused by an unnatural accumulation. See generally *Ziencina v. County of Cook*, 188 Ill. 2d 1, 10-15 (1999) (discussing the interaction between the natural accumulation rule and section 3–105). In *Ziencina*, the supreme court noted that, under the immunity conferred by section 3–105, "a local public entity has no duty to remove natural accumulations of ice and snow from public property," but "if a local public entity undertakes snow-removal operations, it must exercise due care in doing so." *Id.* at 13-14.

¶23　　　Importantly, the supreme court based this holding on the fact that section 3–105 explicitly states that "[n]othing in this Section shall relieve the local public entity of the duty to exercise ordinary care in the maintenance of its property as set forth in Section 3–102." (Internal quotation marks omitted.) *Ziencina*, 188 Ill. 2d at 9-10 (quoting Ill. Rev. Stat. 1989, ch. 85, ¶ 3–105(c) (now codified at 745 ILCS 10/3–105(c) (West 1990))). As the supreme court noted, "the immunity conferred by section 3–105(a) is made subject to the requirement found in sections 3–102 and 3–105(c) that local public entities exercise due care in the maintenance of their property. We believe that this latter requirement means that, if a local public entity undertakes snow-removal operations, it must exercise due care in doing so." *Ziencina*, 188 Ill. 2d at 13.

¶ 24　　　Unlike section 3–105, however, there is nothing in section 3–106 indicating that the natural accumulation rule affects the immunity conferred under that section. Section 3–106 reads, in its entirety:

　　　　　"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless

such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3–106 (West 2008).

In contrast to section 3–105, there is no provision in section 3–106 that makes a public entity subject to the due-care requirements of section 3–102. Indeed, the sole exception to the immunity conferred under section 3–106 is for willful and wanton conduct. The specific provisions of section 3–106 explicitly immunize public entities from all liability for injuries sustained on recreational property except in the case of willful and wanton conduct. But see *Belton v. Forest Preserve District*, 407 Ill. App. 3d 409, 425 (2011) (stating that "Section 3–106 was not intended to immunize the District from any and all tort claims," and finding that the immunity did not apply to bar liability to a non-recreational driver who was injured by a tree branch that fell onto a roadway adjoining recreational property). Based on the plain text of the statute, I do not believe that section 3–106 incorporates the natural accumulation rule. Consequently, the fact that the snow and ice in this case allegedly accumulated unnaturally is irrelevant to the question of immunity under section 3–106.[1]

¶ 25     This means that the only question is whether snow and ice, regardless of how they accumulated, are a "condition" of the property. I agree with the majority that the controlling precedent on this point is the supreme court's decision in *McCuen v. Peoria Park District*, 163 Ill. 2d 125 (1994). Similarly to the present case, the supreme court considered a certified question in which the central issue was what constituted a "condition" on the property. In that case, the alleged condition was a mule-drawn hayrack. See *id.* at 126. The plaintiffs were injured when the hayrack driver negligently struck one of the mules, causing it to bolt and pitch the plaintiffs from the hayrack. See *id.* at 126-27. The supreme court held that section 3–106 did not apply because the plaintiffs were not injured by a condition of the property. See *id.* at 129. The supreme court reasoned that "[p]laintiffs do not claim that the hayrack itself was dangerous, defective or negligently maintained, only that the mule team was not handled properly by the park district employee. *The handling of the mule team does not relate to the condition of the hayrack itself*. If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." (Emphasis added.) *Id.*

¶ 26     As this court has summarized in other cases, "*McCuen* illustrates that section 3–106 immunizes a defendant from liability in negligence where the property itself is unsafe, but that section 3–106 does not immunize the defendant for unsafe activities conducted upon otherwise safe property." *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 722 (2010); accord *Nelson v. Northeast Illinois Regional Commuter R.R. Corp.*, 364 Ill. App. 3d 181, 190 (2006). However, the parties do not cite or analyze *McCuen*, and instead their arguments are generally limited to the applicability of either *Stein v.*

---

[1]To my knowledge, no previous cases have construed section 3–106 to include the natural accumulation rule. The only case that mentions an unnatural accumulation of snow and ice in the context of this section is *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287 (2010). However, *Callaghan* declined to address this issue because the plaintiff in that case failed to develop it on appeal. See *id.* at 300.

*Chicago Park District*, 323 Ill. App. 3d 574 (2001), or *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287 (2010). I do not find either of those cases to be well reasoned or helpful because neither case considers *McCuen*, which is the only supreme court precedent on the meaning of the word "condition" in section 3–106. Moreover, the concept of "movability" that those cases use to frame their analyses does not appear in *McCuen*. See *Callaghan*, 401 Ill. App. 3d at 299-300; *Stein*, 323 Ill. App. 3d at 577-78. As demonstrated by *McCuen*, in my opinion the relevant inquiry in determining whether something is a "condition" within the meaning of section 3–106 is whether a plaintiff's injury was caused by the property itself or by an activity conducted on it. See *McCuen*, 163 Ill. 2d at 129; see also *Vilardo*, 406 Ill. App. 3d at 722; *Nelson*, 364 Ill. App. 3d at 190.

¶ 27    In this case, snow and ice are not an "activity" that is conducted on the property, but are rather passive characteristics of the property. Although plaintiff has alleged that she was injured by the actions of the Park District employee who allegedly placed the unsafe pile of snow and ice in the position that plaintiff encountered it, the employee's action of shoveling did not harm plaintiff. Instead, what plaintiff has alleged in this case is that the parking lot was dangerous, defective, and negligently maintained because it was snowy and icy. *Cf. McCuen*, 163 Ill. 2d at 129 (observing that the plaintiffs in that case "do not claim that the hayrack itself was dangerous, defective or negligently maintained"). It was the snowy and icy condition of the parking lot that plaintiff has alleged caused her injury, rather than any activity that was conducted on the property.

¶ 28    Finally, I must specifically disagree with the majority's assertion that section 3–106 cannot apply in this case because "the Park District employee allegedly moved and stored snow negligently on property of the Park District that was otherwise in a normal state." *Supra* ¶ 13; see also *supra* ¶ 14 (stating that "the property itself was not unsafe, but rather the moving of the snow and ice was an unsafe activity on otherwise safe property"). Negligence such as the kind that plaintiff argues caused her injury is the very type of liability that section 3–106 is intended to immunize public entities against. See *Koltes v. St. Charles Park District*, 293 Ill. App. 3d 171, 177 (1997) ("The legislative intent of section 3–106 is to immunize public entities from liability from simple negligence in areas where public activities, such as activities of a sportive nature, are permitted."), cited in *Belton*, 407 Ill. App. 3d at 415; see also *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 503, 509-10 (1997) (finding that immunity under section 3–106 can extend to injuries sustained on negligently maintained parking lots whose use is integral to the main recreational property).

¶ 29    In sum, it is my opinion that whether snow and ice accumulated naturally or unnaturally is not relevant to the question of whether snow and ice are a condition of the property within the meaning of section 3–106. Moreover, based on my reading of the supreme court's reasoning in *McCuen*, it is my opinion that snow and ice are a condition under section 3–106 because they are a characteristic of the property rather than an activity conducted on it. As a result, I would answer the certified question in the affirmative and hold that an unnatural accumulation of snow and ice constitutes a condition within the meaning of section 3–106.