# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

*Moore v. Chicago Park District*, 2012 IL 112788

---

| | |
|---|---|
| Caption in Supreme Court: | ROBERTA MINOR MOORE, Special Adm'r of the Estate of Sylvia Lee Moore, Deceased, Appellee v. CHICAGO PARK DISTRICT, Appellant. |
| Docket No. | 112788 |
| Filed | October 18, 2012 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The statutory immunity of public entities where property is used for recreational purposes applied even though the slip-and-fall accident which occurred was alleged to have been caused by negligent snow plowing—certified question. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Randye A. Kogan, Judge, presiding |
| Judgment | Appellate court judgment reversed. Cause remanded to circuit court. |

Counsel on
Appeal

George P. Smyrniotis, Heather L. Keil, Brandon M. Fleming and Nelson A. Brown, Jr., of Chicago, for appellant.

Richard J. Grossman, of Steinberg, Burtker & Grossman, Ltd., of Chicago, for appellee.

Edward F. Dutton, of Wheaton, for *amicus curiae* Park District Risk Management Agency.

Leslie J. Rosen, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Kilbride dissented, with opinion, joined by Justice Freeman.

**OPINION**

¶ 1    The circuit court of Cook County certified the following question for interlocutory appeal pursuant to Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)): "Does an unnatural accumulation of snow and ice constitute the 'existence of a condition of any public property' as this expression is used in Section 3-106 of the Tort Immunity Act?" The appellate court answered this question in the negative. 2011 IL App (1st) 103325. We granted leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). For the reasons that follow, we find that the appellate court answered the certified question incorrectly. Accordingly, we reverse the judgment of the appellate court and remand this cause to the circuit court for further proceedings consistent with this opinion.

¶ 2                              BACKGROUND

¶ 3    On January 23, 2006, decedent, Sylvia Lee Moore, fell in the parking lot while she was leaving the Fernwood Park Fieldhouse, owned and operated by defendant Chicago Park District. Three inches of snow had fallen two days earlier and defendant had plowed the parking lot and shoveled and salted the sidewalk leading to the main entrance. Decedent had safely entered the Fieldhouse using this path in order to attend a senior water aerobics class, but chose to exit through another door. Decedent's route to the car in which she was traveling was blocked by three cars parked in designated spots. Decedent chose to walk between two of the cars but slipped as soon as she stepped onto the plowed asphalt.

-2-

Decedent was attempting to step over a pile of snow that had been collected at the edge of the parking lot due to plowing. The snow was approximately five inches high, which was equal to the height of the curb. Decedent fractured her femur in the fall. After undergoing surgery to repair her leg, decedent suffered complications which led to brain damage and subsequently died.

¶ 4   This interlocutory appeal stems from a second amended complaint filed by plaintiff Roberta Minor Moore, as special administrator of the estate of Sylvia Lee Moore, against defendant Chicago Park District, seeking damages pursuant to the Survival Act (755 ILCS 5/27-6 (West 2006)) and the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)). Plaintiff alleged that defendant was negligent in that it, by and through its servants and agents, *inter alia*, "negligently and carelessly shoveled and plowed snow into mounds in the area of the parking lot and walkway including the pedestrian ramp creating an unnatural condition to walk upon or step over." Defendant moved for summary judgment, arguing it was immune from plaintiff's claims under section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/3-106 (West 2008)). On March 18, 2010, the trial court denied defendant's motion, citing *Stein v. Chicago Park District*, 323 Ill. App. 3d 574 (2001), and stating that section 3-106 immunity did not apply because snow is "not affixed to the property in a way that it would become property itself."

¶ 5   On April 13, 2010, defendant filed a motion to certify two questions for interlocutory appeal pursuant to Rule 308, and supplemented its motion on May 10, 2010, based on *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287 (2010), which held that unnatural accumulations of snow and ice represented a "condition of public property" under section 3-106. On October 14, 2010, the trial court vacated its denial of defendant's motion for summary judgment,[1] and on October 29, 2010, the court certified the above-quoted question of law.

¶ 6   The appellate court allowed defendant's application for leave to appeal under Rule 308 and answered the certified question in the negative. The majority concluded, based on this court's holding in *McCuen v. Peoria Park District*, 163 Ill. 2d 125 (1994), that the alleged activity of defendant's employee in moving the snow and ice on the parking lot was an unsafe activity conducted upon otherwise safe property such that defendant could not rely on the immunity provided by section 3-106 of the Act. 2011 IL App (1st) 103325, ¶ 18. Justice Connors dissented, reading *McCuen* to hold that the snow and ice are a condition of

---

[1]We note that the trial court erred in vacating its order denying defendant's motion for summary judgment, as, under Rule 308, the court's interlocutory order was a necessary precedent to the appellate court obtaining jurisdiction to allow an appeal from the order. Thus, the appellate court lacked jurisdiction to grant the appeal and answer the certified question. However, rather than vacate the appellate court's opinion and remand this cause to the circuit court to enter an order from which a Rule 308 appeal can be taken, starting anew a process which will inevitably lead back to this court, we choose to exercise jurisdiction in this case pursuant to our supervisory authority over the Illinois court system. See Ill. Const. 1970, art. VI, § 16; *In re Estate of Funk*, 221 Ill. 2d 30, 97-98 (2006); *People v. Lyles*, 217 Ill. 2d 210, 216 (2005) (our supervisory authority is a broad and unlimited power that grants jurisdiction without need to articulate its instruments or agencies).

the property under section 3-106 because they are a characteristic of the property, rather than an activity conducted on it. 2011 IL App (1st) 103325, ¶ 29 (Connors, J., dissenting).

¶ 7     This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We subsequently allowed the Park District Management Agency to submit an *amicus curiae* brief in support of defendant, and the Illinois Trial Lawyers Association to submit an *amicus curiae* brief in support of plaintiff. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 8                                  ANALYSIS

¶ 9     Generally, the scope of our review is limited to the certified question. *Simmons v. Homatas*, 236 Ill. 2d 459, 466 (2010); *Harvest Church of Our Lord v. City of East St. Louis, Illinois*, 407 Ill. App. 3d 649, 652 (2011). Certified questions, by definition, are questions of law that this court reviews *de novo*. *Simmons*, 236 Ill. 2d at 466; *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58 (2007). Here, we are asked to construe section 3-106 of the Tort Immunity Act. The Illinois legislature enacted the Tort Immunity Act to provide immunities and defenses to governmental entities. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). By shielding recreational-based public entities from liability under section 3-106, the Illinois legislature sought to encourage and promote the development and maintenance of parks, playgrounds, and other recreational areas (*Kayser v. Village of Warren*, 303 Ill. App. 3d 198, 200 (1999)) and to prevent the diversion of public funds from their intended purpose to the payment of damage claims (*Bubb*, 167 Ill. 2d at 378). In interpreting a provision of the Tort Immunity Act, as with any statute, our primary goal is to ascertain and give effect to the intention of the legislature. *Ries v. City of Chicago*, 242 Ill. 2d 205, 215-16 (2011). We seek that intent first from the plain language used in the statute, and if that language is clear and unambiguous, we are not at liberty to depart from its plain meaning. *Id.* at 216.

¶ 10     Section 3-106 of the Tort Immunity Act provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on *the existence of a condition of any public property* intended or permitted to be used for recreational purposes,[2] including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury."[3] (Emphasis added.) 745 ILCS 10/3-106 (West 2008).

¶ 11     In deciding the certified question, *i.e.*, whether an unnatural accumulation of snow and

---

[2]Plaintiff does not dispute the recreational character of the parking lot and sidewalk adjacent to the Fernwood Park Fieldhouse where this incident occurred. See *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 508 (1997) (walkways and parking lots adjacent to stadium increase recreational usefulness of the facility and therefore qualify as property intended for recreational purposes).

[3]Plaintiff has never alleged willful and wanton conduct by defendant, thus this exception to the immunity provided by section 3-106 is not at issue in this case.

ice constitutes the "existence of a condition of public property" under section 3-106, we believe, as did Justice Connors in her dissent below, that it is first important to determine if the characterization of the snow and ice as an "unnatural" accumulation has any bearing on the question's resolution. See 2011 IL App (1st) 103325, ¶ 22 (Connors, J., dissenting). This characterization is a reference to the common law natural accumulation rule, codified in section 3-105(a) of the Tort Immunity Act (745 ILCS 10/3-105(a) (West 2008)). See *Ziencina v. County of Cook*, 188 Ill. 2d 1, 12 (1999) (citing *Lansing v. County of McLean*, 69 Ill. 2d 562, 572 (1978)). As this court stated in *Ziencina*, section 3-105 grants public entities absolute immunity from liability for injuries caused by natural accumulations of snow and ice, but only conditional immunity when the injury is caused by an unnatural accumulation. See *Ziencina*, 188 Ill. 2d at 13-14 (under the immunity conferred by section 3-105, "a local public entity has no duty to remove natural accumulations of ice and snow from public property," but "if a local public entity undertakes snow-removal operations, it must exercise due care in doing so"). In making this finding, *Ziencina* relied on section 3-105(c), which states: "Nothing in this Section shall relieve the local public entity of the duty to exercise ordinary care in the maintenance of its property as set forth in Section 3-102." 745 ILCS 10/3-105(c) (West 2008). *Ziencina*, 188 Ill. 2d at 9-10.

¶ 12    However, as Justice Connors' dissent aptly noted :

"Unlike section 3-105, *** there is nothing in section 3-106 indicating that the natural accumulation rule affects the immunity conferred under that section. *** In contrast to section 3-105, there is no provision in section 3-106 that makes a public entity subject to the due-care requirements of section 3-102. *** The specific provisions of section 3-106 explicitly immunize public entities from all liability for injuries sustained on recreational property except in the case of willful and wanton conduct." 2011 IL App (1st) 103325, ¶ 24 (Connors, J., dissenting).

Similarly, in *Rexroad v. City of Springfield*, 331 Ill. App. 3d 545, 549 (2001), *rev'd on other grounds*, 207 Ill. 2d 33 (2003), the appellate court cited this court's decision in *Bubb* in finding that, while section 3-102 of the Act imposes a duty on local public entities to exercise ordinary care to maintain public property in a reasonably safe condition, "section 3-106 of the Act provides such entities with an affirmative defense that, if properly raised and proved by the entity, bars a plaintiff's right to recovery for ordinary negligence."

¶ 13    We therefore agree with Justice Connors that, based on the plain text of the statute, section 3-106 does not incorporate the natural accumulation rule. "Consequently, the fact that the snow and ice in this case allegedly accumulated unnaturally is irrelevant to the question of immunity under section 3-106." 2011 IL App (1st) 103325, ¶ 24 (Connors, J., dissenting).

¶ 14    Thus, the question remaining is whether snow and ice, regardless of their natural or unnatural accumulation, are a "condition" of the public property. As did both the majority and the dissent below, we find the controlling precedent on this point to be this court's decision in *McCuen v. Peoria Park District*, 163 Ill. 2d 125 (1994). In *McCuen*, as in the present case, this court considered certified questions in which the central issue was what constitutes a "condition" of public property for purposes of section 3-106. *Id.* at 128 ("In order to determine whether section 3-106 applies, the court must determine whether liability

for the injury alleged is based on 'the existence of a condition of any public property.' "). The plaintiffs in *McCuen* were on property owned and operated by a park district. The plaintiffs were injured when they were thrown from a hayrack ride pulled by a mule team when the driver negligently slapped one of the mules, causing it to bolt. In deciding the certified questions raised therein, this court reasoned:

> "We do not believe that a driverless hayrack is a condition of public property within the meaning of section 3-106. Plaintiffs do not claim that the hayrack itself was dangerous, defective or negligently maintained, only that the mule team was not handled properly by the park district employee. *The handling of the mule team does not relate to the condition of the hayrack itself.* If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." (Emphasis added.) *McCuen*, 163 Ill. 2d at 129.

¶ 15    Thus, under *McCuen*, the relevant inquiry in determining whether something is a "condition" within the meaning of section 3-106 is whether a plaintiff's injury was caused by the property itself or by an activity conducted on the property. See 2011 IL App (1st) 103325, ¶ 26 (Connors, J., dissenting). Put another way, activities conducted on public property "intended or permitted to be used for recreational purposes" are not considered "conditions of" the property. 745 ILCS 10/3-106 (West 2008). We agree with other Illinois courts which have found that *McCuen* illustrates that section 3-106 immunizes a defendant from liability in negligence where the property itself is unsafe, but that section does not immunize the defendant from unsafe activities conducted upon otherwise safe property. See *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 722 (2010); accord *Nelson v. Northeast Illinois Regional Commuter R.R. Corp.*, 364 Ill. App. 3d 181, 190 (2006).

¶ 16    In this case, the existence of snow and ice was not an activity conducted on defendant's property, but rather a condition of the property. Indeed, we agree with Justice Connors that snow and ice are "passive characteristics of the property" (2011 IL App (1st) 103325, ¶ 27 (Connors, J., dissenting)). In contrast to *McCuen*, where this court found section 3-106 immunity inapplicable because the plaintiffs' injuries were due to the negligent action of defendant's employee in handling a mule-team drawn hayrack, that immunity applies here where it was not the actions of defendant's employee in using snow removal equipment, but the allegedly unsafe condition of the property itself which caused injury to plaintiff's decedent. See *McCuen*, 163 Ill. 2d at 129 ("The handling of the mule team does not relate to the condition of the hayrack itself."). Thus, based on *McCuen*, we reject plaintiff's allegations that the decedent was injured by the actions of defendant's employee in negligently shoveling and plowing snow, as it was not the employee's actions, but the snowy and icy condition of the parking lot, which caused the injury.

¶ 17    Accordingly, we also reject the appellate court majority's conclusion that, under *McCuen*, "[s]ince the Park District employee allegedly moved and stored snow negligently on property of the Park District that was otherwise in a normal state, section 3-106 of the Act does not apply." 2011 IL App (1st) 103325, ¶ 13. The majority improperly bases this finding on the following statement in *McCuen*: " 'If otherwise safe property is misused so that it is

no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property.' " *Id.* (quoting *McCuen*, 163 Ill. 2d at 129). In other words, if the otherwise safe hayrack is misused by a park district employee so that it is no longer safe, but the hayrack itself remains unchanged, any danger presented by the hayrack is due to the actions of the employee and not the condition of the hayrack, and section 3-106 does not apply. Conversely, here, there was no misuse of property that contributed to plaintiff's decedent's injury; rather, the condition of the property was simply changed due to the new condition of the snow and ice located thereon, such that section 3-106 immunity applies.

¶ 18    Additionally, the appellate court majority's reliance on *Stein v. Chicago Park District*, 323 Ill. App. 3d 574 (2001), exacerbated its misreading of *McCuen*, by leading it to the conclusion that the temporary nature of snow and ice prohibited the snow and ice from constituting a condition of property under section 3-106. In *Stein*, 323 Ill. App. 3d at 576, the plaintiff tripped over a watering hose that had been stretched across a sidewalk by employees of the park district as they watered a nearby garden. The court found that because the hose was moved from place to place within the park to water plants, then returned to storage at day's end, the hose "was not affixed to the property in such a way as to become a part of the property itself." *Id.* at 577. The *Stein* court therefore held that as the hose was not part of the property, it was not a "condition" thereto and section 3-106 did not apply. *Id.* Based on *Stein*, the appellate court majority in this case held:

> "Here, it is alleged that the Park District employee moved the snow into a dangerous position on the property. *Certainly, the snow was not affixed to the property so as to become a part of the property itself.* See *Stein*, 323 Ill. App. 3d at 577. Therefore, the property itself was not unsafe, but rather the moving of the snow and ice was an unsafe activity on otherwise safe property. *McCuen*, 163 Ill. 2d at 129." (Emphasis added.) 2011 IL App (1st) 103325, ¶ 14.

¶ 19    However, we find that, contrary to the holding in *Stein*, section 3-106 of the Tort Immunity Act does not limit "a 'condition of any public property,' " as the statute states, to only those elements that are "affixed to the property in such a way as to become a part of the property itself" (*Stein*, 323 Ill. App. 3d at 577). Rather, we agree with *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 299 (2010), that *Stein*'s holding is unsupported by the language of section 3-106 and is in contravention of other case law.[4] First, it is clear that the language of section 3-106 does not contain a requirement that a condition of public property must be "affixed" before immunity applies. Indeed, the plain language of that section does not limit itself to any particular type of condition. See *Callaghan*, 401 Ill. App. 3d at 299.

¶ 20    Second, although the Act does not define "condition," we observe that Illinois courts have, on numerous occasions, applied section 3-106 immunity to movable conditions of public property. See, *e.g.*, *Sylvester v. Chicago Park District*, 179 Ill. 2d 500 (1997) (plaintiff

---

[4]We note that *Callaghan* was the case which caused the trial court herein to vacate its denial of defendant's motion for summary judgment based on *Stein* and request clarification through a certified question.

barred from recovery when injured by falling over movable concrete car stop); *Kayser v. Village of Warren*, 303 Ill. App. 3d 198 (1999) (plaintiff barred from recovery when injured in fall as she attempted to maneuver around movable chair propping open exit door); *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013 (1991) (plaintiff barred from recovery when injured by movable cable barricade restricting entry to forest preserve access road); *Majewski v. Chicago Park District*, 177 Ill. App. 3d 337 (1988) (plaintiff barred from recovery when injured by falling on movable broken glass on football field). Even more elucidating is *Grundy v. Lincoln Park Zoo*, 2011 IL App (1st) 102686, a recent decision by a different division of the First District than that involved herein, which considered a similar certified question as to the meaning of the phrase "a condition of any public property" under section 3-106.

¶ 21　　In *Grundy*, after examining this court's opinions in *McCuen*, *Sylvester*, and *Rexroad v. City of Springfield*, 207 Ill. 2d 33 (2003), the panel stated:

> "These three decisions leave little doubt that the Supreme Court has understood, if not outright announced, that section 3-106 immunity extends to injuries caused by the condition of movable personal property, as in *McCuen*, or by movable items on real property, as in *Sylvester*. The supreme court's decision in *Rexroad*, in fact, goes so far as to explain that section 3-106 immunity applies in the case of 'misplaced' movable items.[5] Because section 3-106 provides immunity only for injuries caused by 'a condition of [any] public property,' we must take from these supreme court decisions that it has concluded that misplaced movable items can constitute a condition of public property." *Grundy*, 2011 IL App (1st) 102686, ¶ 11.

We agree with this assessment of our prior opinions, and accordingly find, to the extent that *Stein* contradicts this conclusion, it is overruled.

¶ 22　　Finally, our holding that snow and ice are a condition of public property such that defendant is immune from liability under section 3-106 is in harmony with that statute's purpose, which, as we have stated, is to encourage the development and maintenance of, *inter alia*, public parks, playgrounds, "open areas, buildings or other enclosed recreational facilities." 745 ILCS 10/3-106 (West 2008); see *Kayser*, 303 Ill. App. 3d at 200; *Lewis v. Jasper County Community Unit School District No. 1*, 258 Ill. App. 3d 419, 422 (1994). As this court stated in *Sylvester*, "section 3-106 may apply to facilities or structures *that increase the usefulness* of public property intended or permitted to be used for recreational purposes." (Emphasis added.) *Sylvester*, 179 Ill. 2d at 508. While we have found the nature of the accumulation of snow and ice to be irrelevant to our determination of the certified question, a reading of section 3-106 which encourages the maintenance of a parking area adjacent to a recreational facility through the removal of snow and ice clearly "increase[s] the usefulness" of that recreational facility. As previously noted, "[b]y providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims." *Bubb*, 167 Ill. 2d at 378. Thus, we find it to be in line

---

[5]This court in *Rexroad*, 207 Ill. 2d at 41, in considering whether property constituted "recreational property" under section 3-106, described *Sylvester* as involving a plaintiff who "tripped on a misplaced, concrete car stop."

with the public policy of this state to promote the expenditure of public funds for the purpose of creating greater access to recreational areas, rather than to divert those funds to pay damage claims stemming from the resulting condition of that property.

¶ 23                                          CONCLUSION

¶ 24        In summary, the fact that the snow and ice in this case allegedly accumulated unnaturally is irrelevant to the question of immunity under section 3-106. Further, unlike *McCuen*, where the defendant was not immune under section 3-106 because the plaintiff was injured by an activity conducted on the property, here section 3-106 immunizes defendant where plaintiff's decedent was injured due to an alleged unsafe condition of the property, *i.e.*, the movable accumulated snow and ice. Therefore, the question of whether an accumulation of snow and ice constitutes the "existence of a condition of any public property," as this expression is used in section 3-106 of the Tort Immunity Act, must be answered in the affirmative.

¶ 25        Based upon the foregoing, the judgment of the appellate court is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 26        Appellate court judgment reversed.

¶ 27        Cause remanded to circuit court.

¶ 28        CHIEF JUSTICE KILBRIDE, dissenting:

¶ 29        I disagree with the majority's decision answering in the affirmative the certified question of whether "an unnatural accumulation of snow and ice constitute[s] the 'existence of a condition of any public property' as this expression is used in Section 3-106 of the Tort Immunity Act." I believe the majority's decision expands immunity beyond what the legislature intended in enacting section 3-106. Accordingly, I respectfully dissent.

¶ 30        This case presents an issue of statutory construction. The primary objective of statutory construction is to ascertain and give effect to the intent of the legislature. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010). The language of the statute, given its plain and ordinary meaning, is the most reliable indicator of the legislature's intent. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). The Tort Immunity Act was enacted in derogation of the common law and, therefore, it must be construed strictly against the governmental entity claiming immunity. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).

¶ 31        Section 3-106 provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on *the existence of a condition of any public property* intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added.) 745 ILCS 10/3-106 (West 2008).

¶ 32        As explained by the majority, under *McCuen v. Peoria Park District*, 163 Ill. 2d 125

(1994), "the relevant inquiry *** is whether a plaintiff's injury was caused by the property itself or by an activity conducted on the property." *Supra* ¶ 15. The focus is on the cause of the injury.

¶ 33    The majority concludes the injury here was caused by the unsafe condition of the property, not the actions of defendant's employees in using snow removal equipment. The majority asserts, "it was not the employee's actions, but the snowy and icy condition of the parking lot, which caused the injury." *Supra* ¶ 16.

¶ 34    I disagree. Plaintiff alleged that defendant, by and through its agents, "negligently and carelessly shoveled and plowed snow into mounds in the area of the parking lot and walkway including the pedestrian ramp creating an unnatural condition to walk upon or step over." The decedent fell when she attempted to step over the piles of snow and ice created by the snow removal activity. Consistent with the allegations of the complaint, the certified question is phrased in terms of an "unnatural accumulation of snow and ice." Under the allegations of the complaint and the certified question, the mere existence of snow and ice on the property did not cause the injury in this case. Rather, the injury was caused by the allegedly negligent snow removal activity conducted by defendant, resulting in mounds of snow and ice for the decedent to navigate. The mounds of snow and ice would not have existed without the negligent snow removal activity.

¶ 35    I believe an application of *McCuen* also supports a finding that section 3-106 does not apply in these circumstances. In *McCuen*, a park district operated a mule-drawn hayrack ride in one of its parks. An employee caused "the mule team to suddenly bolt and run off with the driverless hayrack." Several people were injured when they were thrown from the hayrack. The trial court certified a question requiring a determination of whether liability for the injury alleged was based on "the existence of a condition of any public property" under section 3-106. In deciding the certified question, this court stated:

> "We do not believe that a driverless hayrack is a condition of public property within the meaning of section 3-106. Plaintiffs do not claim that the hayrack itself was dangerous, defective, or negligently maintained, only that the mule team was not handled properly by the park district employee. The handling of the mule team does not relate to the condition of the hayrack itself. If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." *McCuen*, 163 Ill. 2d at 129.

¶ 36    This court concluded by stating:

> "Plaintiffs seek to impose liability based on the negligent conduct of a park district employee. The claimed liability, however, is based on the alleged negligence of an employee and not on the existence of a condition of public property, within the meaning of section 3-106. Section 3-106, therefore, does not apply." *McCuen*, 163 Ill. 2d at 130.

¶ 37    Similarly, in this case, plaintiff seeks to impose liability based on the negligent conduct of defendant's employees. The decedent's injury was caused by the allegedly negligent snow removal activity resulting in the unnatural accumulation of snow and ice. The mounds of snow and ice would not have existed absent the negligent snow removal.

¶ 38 In sum, the injury here was not caused by the property itself, but by the allegedly negligent snow removal activity. In my view, the appellate court correctly answered in the negative the certified question of whether "an unnatural accumulation of snow and ice constitute[s] the 'existence of a condition of any public property' as this expression is used in Section 3-106 of the Tort Immunity Act." I would affirm the appellate court's decision. Accordingly, I respectfully dissent.

¶ 39 JUSTICE FREEMAN joins in this dissent.